EL MUNICIPIO DE CIALES, demandante y apelado, *v.* VALENTÍN POLANCO DE JESÚS, demandado y apelante. EL MISMO, demandante y apelante, *v.* EL MISMO, demandado y apelado.

Núms. 8917, 8925.—*Sometidos:* Junio 21, 1944. *Resueltos:* Julio 3, 1944.

*Angel Rivera Colón*, abogado del demandado, apelado y apelante; *Valentín Polanco de Jesús, pro se.*

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Municipio de Ciales instó este pleito en cobro de servicio de alcantarillado y de agua del acueducto suministrada a dos casas de viviendas y a una fábrica de hielo que el demandado posee en dicha población.([1])

---

([1])A virtud de la Ordenanza núm. 8 ''Para Reglamentar el Uso del Alcantarillado y del Acueducto del Municipio de Ciales, Puetro Rico, y para otros fines,'' aprobada el 12 de septiembre de 1931, enmendada por la Ordenanza núm. 1 del referido Municipio aprobada el 28 de julio de 1932, todo propietario o administrador de casas deberá pagar por el uso del alcantarillado un dólar mensual por cada acometida. En relación con el servicio de agua del acueducto, la misma Ordenanza prescribe:

''Sección 16. El servicio de agua a los abonados se cobrará de acuerdo con el diámetro de la tubería que se usare, en la siguiente forma:

Por servicio de alcantarillado suministrado, se reclamó en la primera causa de acción:

Casa, Calle Betances. Desde el 1 de julio de 1936 hasta el 30 de junio de 1942, o sea 72 meses, ................ $72.00

Casa, Calle Obreros. Desde el 1 de enero de 1933 hasta el 30 de junio de 1939; desde el 1 de julio de 1940 hasta el 30 de julio de 1941, y desde el 1 de octubre de 1941 hasta el 30 de junio de 1942, en total 99 meses, ............ 99.00

Casa, Prolongación de la Calle Palmer. Desde el 1 de julio de 1933 hasta el 30 de noviembre de 1940, y desde el 1 de julio de 1941 hasta el 30 de marzo de 1942, en total 98 meses, ........................................ $98.00

Total adeudado por servicio de alcantarillado, ...... $269.00

Por servicio de agua se reclamó en la segunda causa de acción:

Casa, Calle Betances. Desde el 1 de julio de 1935 hasta el 30 de junio de 1942, o sea 84 meses, a razón de sesenta centavos mensuales, ................................ $50.40

Casa, Calle Obreros. Desde el 1 de abril de 1932 hasta el 30 de junio de 1939; desde el 1 de julio de 1940 hasta el 1 de julio de 1941, y desde el 1 de octubre de 1941 hasta el 30 de junio de 1942, en total 108 meses, a razón de sesenta centavos mensuales, .............................. 64.80

Casa, Prolongación de la Calle Palmer. Desde el 1 de julio de 1932 hasta el 30 de noviembre de 1940, y desde el 1 de julio de 1941 hasta el 31 de marzo de 1942, en total 110 meses, a razón de $7.20 mensuales, (²) ...... $792.00

Abonado, ................................ 39.60    752.40

Total reclamado por suministro de agua, ...... $867.60

"Hasta ½ pulgada, $7.20 al año, o sea $1.80 el trimestre por cada acometida;

" . . .

"Y de 1 pulgada, $28 al año, o sea $7.20 por trimestre, por cada acometida.

" . . . Las grandes industrias como . . . plantas 'de hielo . . . pagarán el triple de la tarifa establecida."

(²) Esta casa está dedicada a fábrica de hielo y su tubería tiene un diámetro de una pulgada, por lo cual la tarifa es tres veces la correspondiente a una casa de vivienda con tubería de idéntico diámetro.

La corte inferior dictó sentencia a favor del demandante por $848.60, con intereses legales y las costas, en vez de $1,136.60 reclamados en las dos causas de acción. Contra esa sentencia ambas partes interpusieron recursos de apelación, los cuales perfeccionaron separadamente, siendo radicados en este tribunal con el número 8917 el del demandado y con el número 8925 el del demandante.

En relación con el recurso número 8925 interpuesto por el demandante, el demandado presentó una moción solicitando su desestimación por el fundamento de no habérsele notificado el legajo de sentencia.

Hemos comparado el legajo de sentencia en uno y otro recurso, y tenemos que concluir que ningún perjuicio pudo ocasionársele al demandado al no entregársele copia del legajo de sentencia que formó parte del recurso interpuesto por el demandante. El legajo de sentencia en uno y otro caso son virtualmente los mismos. En el recurso interpuesto por el demandante no se transcribe una "Orden Resolviendo Moción de Especificaciones" que incluye el demandado en el recurso por él interpuesto, pero esa omisión no tiene importancia, toda vez que el propio demandado, a pesar de que la incluyó en el legajo de sentencia, no levanta en su recurso ninguna cuestión relativa a ella. Otra diferencia que existe entre los dos recursos es que en el legajo de sentencia en el recurso interpuesto por el demandado se incluye la notificación de sentencia, mientras que ella fué omitida en el recurso interpuesto por el demandante. Y finalmente el legajo de sentencia en el recurso interpuesto por el demandado aparece certificado por los abogados, mientras que el legajo de sentencia del recurso del demandante aparece certificado por el secretario de la corte inferior. Ningún documento se incluyó en el legajo de sentencia que aparece en el recurso interpuesto por el demandante, que no forme parte del legajo de sentencia en el recurso interpuesto por el demandado. Siendo, como demostraremos que es, meritorio el recurso interpuesto por el municipio, y no habiéndose causado ningún perjuicio al demandado

por el defecto de notificación del legajo de sentencia, artículo 142, Código de Enjuiciamiento Civil, procede denegar la moción de desestimación.

El demandado sostiene que erró la corte inferior (1) al declarar sin lugar la defensa de prescripción por él invocada; (2) al admitir y apreciar la evidencia, y (3) al condenarlo a pagar por agua suministrada a inquilinos de la casa radicada en la Calle Obreros.

El demandante a su vez impugna la sentencia porque (1) condenó al demandado a pagar el agua suministrada a la fábrica de hielo durante el período comprendido entre el 1 de julio de 1932 y el 30 de junio de 1937, a razón de $2.40 mensuales, en vez de $7.20 como establece la ordenanza municipal; y (2) no condenó al demandado a pagar honorarios de abogado.

Consolidaremos ambos recursos a los efectos de esta opinión.

El demandado, luego de referirse a cierto convenio que más adelante discutiremos, celebrado con el alcalde, resumiendo su propia declaración dice en la página 39 de su alegato:

"Se pagó $1.20 al mes hasta el año 1936 en que el declarante adquirió créditos contra el Municipio. Entonces el testigo le dijo al Alcalde que en vista de que tenía fuertes créditos contra el Municipio y éste no abonaba nada, quedaría la cuenta pendiente hasta tanto el Municipio pagara para entonces el testigo pagarle a él y así se quedó hasta que vino la nueva administración en 1941."

Habiendo aceptado el demandante la proposición del demandado y no apareciendo que el municipio haya pagado su deuda, a virtud de su propio convenio el demandado está impedido de alegar la prescripción contra el demandante, quien por haber aceptado su proposición no cobró oportunamente la deuda.

Actuó por lo tanto con arreglo a derecho la corte sentenciadora al desestimar la defensa de prescripción.

■ Discutiendo la defensa alegada por el demandado en relación con la imposibilidad de usar el agua suplida por el municipio para operar la fábrica de hielo, la corte sentenciadora dijo en su opinión:

"Ahora bien, de la prueba quedamos convencidos que hasta el año 1937, el Municipio de Ciales tenía muy poca presión en el acueducto, a tal extremo, que el demandado solamente podía usar el agua, en su planta de hielo, para fines de limpieza, hasta 1937, y tuvo que comprar una máquina especial para halar el agua y construir depósitos especiales para almacenar agua al efecto de alimentar el condensador durante las horas de trabajo, pues el agua del acueducto no tenía la presión suficiente para mover la planta de hielo, como declaró en forma específica el perito presentado en la vista del caso.

"El señor Andrés Robles, que fué el Alcalde anterior, declaró que en el 1937 se hizo un nuevo acueducto de la represa de la quebrada 'Sonadora' y que desde entonces hubo bastante presión, pero que anteriormente la presión era muy poca.

"La suma de $7.20 mensuales es la que fija la tarifa cuando se usa una tubería con diámetro de una pulgada, en casas dedicadas a industrias, y las otras casas, por ese mismo servicio, les corresponde pagar la suma de $2.40 mensuales.

"Si el demandado desde julio primero de 1932 hasta el 1937, no podía utilizar para su planta de hielo un servicio eficiente por falta de presión, sería injusto cobrarle la tarifa triple de $7.20. Como él usaba alguna agua, según él admitió, para fines de limpieza en la planta, la tarifa correcta debe ser $2.40 mensuales, hasta 1937 en que hubo bastante presión, según admitió el anterior alcalde, Andrés Robles, traído por el propio demandado.

"Como la demanda cobró 110 meses a razón de $7.20 por el servicio de acueducto a la casa donde estaba instalada la planta de hielo del demandado, hay que hacer una deducción de acuerdo con las razones arriba expresadas, en la forma siguiente: Entendemos que debe cobrarse al demandado por cinco años, o sea, desde julio de 1932, a junio de 1937, por el servicio de acueducto a la casa de la planta, que incluyen 60 meses, a razón de $2.40 mensuales, y desde el primero de julio de 1937 hasta marzo 31 del 1942, o sean, 50 meses, a razón de $7.20. Esto arroja un total por el servicio de acueducto a la referida casa de la planta de hielo de $504 en vez de $792 como se cobra en la demanda."

La ordenanza municipal fija—y así lo admite la corte inferior—el precio de $7.20 mensuales por el suministro de agua a la planta de hielo, usando como usa ésta un tubo de una pulgada de diámetro. Es verdad que el demandado presentó evidencia al efecto de que al iniciarse el servicio de agua en la fábrica de hielo, el alcalde, teniendo en cuenta las deficiencias alegadas por el demandado y a las cuales se refiere el juez en los párrafos que acabamos de transcribir de su opinión, convino con el demandado en que en vez de $7.20 mensuales solamente pagase $1.20 mensuales. Pero no podemos perder de vista que el alcalde carecía de facultad para, por su propia cuenta y sin que hubiese un previo acuerdo de la Asamblea al efecto, alterar el precio fijado para el agua en la ordenanza municipal. Si el agua era insuficiente, el demandado pudo solicitar que la Asamblea, considerando esa circunstancia, tomase un acuerdo rebajando la tarifa, o pedir que se descontinuase el servicio, pero no vemos con qué autoridad el juez de la corte inferior pudo variar la tarifa especificada en la ordenanza.

Por lo expuesto, el convenio celebrado entre el demandado y el alcalde debe considerarse como inexistente a los efectos legales.

■ También es cierto que al tomar posesión la nueva administración del Municipio de Ciales, encontró que en los libros del municipio sólo se cargaba al demandado la cantidad de $1.20 por el servicio de agua a la fábrica de hielo, y que el nuevo tesorero, al encontrarse con que esa cantidad no era la que debía cobrarse de acuerdo con la ordenanza, hizo la correspondiente enmienda en los libros, cargándosele al demandado, por todo el tiempo transcurrido desde que se inició el servicio, a razón de lo especificado en la ordenanza municipal. Esa actuación del tesorero municipal no fué ilegal, como alega el demandado. Por el contrario, se ajustaba a lo prescrito en la ordenanza.

■ Se queja el demandado de que la corte lo condenó a pagar el agua consumida por los inquilinos que ocupaban la

casa de la Calle Obreros. A este efecto dijo la corte sentenciadora:

'No hemos quedado convencidos de la alegación que hace el demandado con respecto a que inquilinos de su casa fueran responsables por el uso del acueducto. Si bien el Tribunal Supremo ha resuelto que la deuda por agua o alcantarillado no es un gravamen sobre la propiedad y que vendida una casa al comprador no es responsable de lo que adeuda el vendedor, la cuestión en este asunto es distinta. La cuenta fué abierta a nombre del demandado en los libros del Municipio. Y él notificaba por cartas al Municipio las fechas en que los inquilinos se mudaban para que le rebajasen el tiempo en que la casa no estaba usando el servicio. La costumbre general es que el dueño de la casa es quien paga el agua, aunque admitimos que si el Municipio se entiende directamente con el inquilino, no puede después reclamar contra el propietario. Tal situación no fué probada.''

El propio demandado, conforme resulta de la evidencia, se dirigió por escrito al municipio avisándole haberse desocupado la casa, y en su declaración (T. de E., pág. 101) expresamente admitió que los inquilinos en distintas ocasiones dejaron en su poder dinero para pagar el agua. Si en verdad el demandado no venía obligado a pagarla, no vemos por qué los inquilinos habían de entregarle el montante de lo adeudado por ellos ni por qué el demandado había de aceptarlo para por su conducto satisfacerlo al Municipio.

A nuestro juicio, la conclusión a que llegó la corte sentenciadora sobre este punto se ajusta a la ley y está sostenida por la prueba.

■ Sólo nos resta considerar si erró la corte inferior al no condenar al demandado al pago de honorarios de abogado.

Sobre este punto dijo la corte sentenciadora:

''No se condena al demandado a pagar honorarios de abogado, porque las circunstancias que han mediado en los hechos de esta demanda, obligaron al demandado a defenderse y fué necesario el litigio para ajustar el débito a la suma razonable.''

Como hemos visto, no existe el fundamento expuesto por el juez de la corte inferior para eximir al demandado del

pago de honorarios de abogado. No era necesario practicar reajuste alguno con respecto a lo reclamado por concepto de agua consumida por el demandado en su fábrica de hielo. Todas las partidas reclamadas por el demandante han sido concedidas, sin que pueda haber duda alguna a nuestro juicio sobre la procedencia de las mismas. Siendo ello así, erró la corte inferior al no condenar al demandado al pago de una cantidad razonable para honorarios de abogado.

*Por lo expuesto, procede modificar la sentencia de forma que condene al demandado a pagar al municipio demandante la cantidad de $1,136.60, con intereses legales, costas y cien dólares por concepto de honorarios de abogado. Así modificada, se confirma.*